RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0212P (6th Cir.)
File Name: 03a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                        No. 01-1572

GREGORIO CAMEJO,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80169—Bernard A. Friedman, District Judge.

Submitted: May 2, 2003

Decided and Filed: June 26, 2003

Before: MOORE and ROGERS, Circuit Judges; HOOD,
District Judge.[*]

———————————

**COUNSEL**

**ON BRIEF:** Kevin M. Schad, SCHAD & COOK, Indian
Springs, Ohio, R. Steven Whalen, Detroit, Michigan, for

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

Appellant.    Daniel R. Hurley, UNITED STATES
ATTORNEY, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

HOOD, District Judge. Defendant was convicted of assault
resulting in serious bodily injury while within the special
territorial jurisdiction of the United States, in violation of 18
U.S.C. § 113(a)(6). Defendant appeals his conviction and
sentence of 120 months incarceration (representing a 23-
month upward departure). Jurisdiction is proper under 28
U.S.C. § 1291.

## I. Introduction

The underlying events giving rise to defendant's
prosecution took place at approximately four o'clock on
June 27, 1999, in and around the defendant's cell at the
Federal Correctional Institution in Milan, Michigan. At that
time and on that date, defendant and his cell mate, Abel Perez
("Perez"), were involved in a scuffle, which ended when
defendant cut Perez with a razor blade. Perez suffered deep
cuts on his left shoulder and arm, which required more than
sixty stitches.

At trial, Perez and defendant painted starkly different
pictures of what transpired. According to Perez, he had
returned to their cell (his and defendant's) for the afternoon
inmate count and slipped into the lower bunk bed, when
defendant - resting on the top bunk - became agitated at the
noise Perez was making. Defendant became extremely angry,
came down from his top bunk, yelled at Perez, then tried to
strike Perez while he was still in his bunk. Perez then walked
away from the incident, leaving the cell and walking just
outside the cell door, where he was required to be for the
inmate count. As Perez leaned on the railing of the walkway
outside the cell, waiting for the count, defendant slashed him
twice from behind with a razor blade, and cut Perez's arm

when Perez turned around and warded off a second blow. Perez would later require forty-one stitches in his left shoulder and twenty-one in his left forearm. Defendant later told police that, as Perez lay bleeding, he walked away and disposed of the blade.

Defendant's version was predictably different. According to defendant, it was Perez who became agitated, and it was defendant who attempted to be a calming influence and to end the hostilities. Defendant testified that Perez entered the cell with the intention of fighting him, and that Perez had roused him from sleep and had insulted his mother. Defendant further testified that when Perez left the cell defendant believed him to be retrieving a weapon.

The jury believed Perez, and defendant was convicted of assault resulting in serious bodily injury. At sentencing, both parties moved for departures: defendant sought a downward departure on the basis of his two years pre-offense incarceration as an immigration "hold," the government an upward departure on the basis of the nature of the crime itself (in a federal prison) and the defendant's well-documented history of criminal conduct and disciplinary complaints. The district court determined that the case fell outside the heartland of offenses covered by the Sentencing Guidelines and departed upwards by twenty-three months, sentencing defendant to 120 months incarceration.

## II.  Defendant's Conviction

Defendant challenges his conviction on two grounds. First, defendant maintains that the interpreter's difficulty in translating his testimony violated his right to a fair trial. Second, he argues that the district court erred in failing to instruct on what he deemed to be the lesser included offense of assault by striking, beating, or wounding, 18 U.S.C. § 113(a)(6).

### A.  The Translation Problems

Critically, defendant made no objection in the district court to the purported translation errors. Accordingly, this court reviews for plain error. *United States v. Collins,* 78 F.3d 1021, 1033 (6th Cir. 1996). "Plain error is defined as an egregious error, one that directly leads to a miscarriage of justice," *United States v. Frazier,* 936 F.2d 262, 266 (6th Cir. 1991), or error that is obvious, affects substantial rights, and seriously impairs the fairness or integrity of the judicial proceedings. *United States v. Modena,* 302 F.3d 626 (6th Cir. 2002).

Defendant generally complains that the government interpreter charged with translating (from Spanish to English) the testimony of defendant's cell mate and victim, Abel Perez, was incompetent, and that his multiple translation mistakes rendered defendant's trial fundamentally unfair. Defendant alleges that Perez's translator, among other things, failed to translate verbatim, translated in the third person, confused and failed to identify pronouns, and improperly summarized Perez's testimony. The record supports defendant's contention that there were, at times, difficulties.

Courtroom use of interpreters is governed by the Court Interpreters Act, 28 U.S.C. § 1827. The statute both provides rules for the appointment of interpreters and outlines a minimal, general standard of interpreter performance. Specifically, 28 U.S.C. § 1827(e) requires that

> [i]f any interpreter is unable to communicate effectively with the presiding judicial officer, the United States attorney, a party (including a defendant in a criminal case), or a witness, the presiding judicial officer shall dismiss such interpreter and obtain the services of another interpreter in accordance with this section.

28 U.S.C. § 1827(e). The statute appears to place the burden of ensuring competent translation on the presiding judicial officer (i.e., in this case, the district judge).

In the instant appeal, however, the district court cannot be said to have plainly erred in failing to replace the interpreter. For one, it is significant that, however inelegant, the interpreter's translation was not sufficiently poor so as to provoke objection. Also, a review of the trial transcript reveals that, though the interpreter struggled, the district judge handled the problems as they arose. As well, it is significant that the translation problems did not involve the testimony of the *defendant*; rather, the problems were with that of the *victim,* Abel Perez. Finally - and perhaps most telling of all - both defendant *and his lawyer* spoke Spanish. It was not as if defendant and his counsel were relying on the interpreter to understand the victim's testimony.

In the final analysis, there can be little doubt but that, while the interpreter's performance was (as even the government concedes) "not a model of clarity and efficiency," any mistakes were corrected and there was no substantive effect on the proceedings. Error, if any, was certainly not "plain."

B.   The District Court's Refusal to Instruct on Assault by Striking, Beating, or Wounding

Defendant, charged and ultimately convicted of assault resulting in serious bodily injury (18 U.S.C. § 113(a)(6)), contends that the district court erred in declining defendant's request to instruct on what defendant alleged to be the lesser included offense of assault by striking, beating, or wounding (18 U.S.C. § 113(a)(4)). At trial, the district court found that the latter offense was not, in fact, a lesser included offense of the former, and elected instead to instruct on the lesser included offense of simple assault (18 U.S.C. § 113(a)(5)).

A criminal defendant is entitled to an instruction on a lesser included offense if: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser. *United States*

*v. Colon,* 268 F.3d 367 (6th Cir. 2001). In the instant appeal, the district court found that defendant could not satisfy this standard because the elements of assault by striking, beating, or wounding are *not* identical to part of the elements of assault resulting in serious bodily injury.

Despite some suggestion by one of our sister circuits that assault by striking, beating, or wounding *is* a lesser included offense of assault resulting in serious bodily injury, *see, e.g., United States v. McCloskey,* 169 F.3d 506, 507 n.1 (8th Cir. 1999)("[The defendant] was also convicted of assault by striking in violation of 18 U.S.C. § 113(a)(4), a lesser included offense of assault resulting in serious bodily injury."); *United States v. Felix,* 996 F.2d 203, 207 (8th Cir. 1993)("Assault by striking, beating, or wounding ... is a lesser included offense of assault resulting in serious bodily injury."); *United States v. Young,* 875 F.2d 1357, 1359 (8th Cir. 1989)("[Defendant] argues that the trial court erred in denying [his] request for a jury instruction on the lesser included offenses of Simple Assault and Assault by Striking, Beating or Wounding."), the district court was undoubtedly correct in its determination that assault by striking, beating, or wounding is *not* a lesser included offense of assault resulting in serious bodily injury.[1] This is so because assault by striking, beating, or wounding requires proof of an element not required for the greater offense - that is, some form of contact. *United States v. Duran,* 127 F.3d 911 (10th Cir. 1997)("Assault by striking, beating or wounding under 18 U.S.C. § 113(a)(4) (formerly 18 U.S.C. § 113(d)) requires a physical touching and is the equivalent of simple battery.")(citations omitted); *United States v. Johnson,* 637 F.2d 1224, 1242 n.26 (9th Cir. 1980), *overruled on different grounds by United States v. Lopez,* 885 F.2d 1428 (9th Cir. 1989)("Assault by striking, beating or wounding is the

---

[1] The court questions the viability of the cited cases inasmuch as none of these cases reference *Schmuck v. United States,* 489 U.S. 705 (1989), much less employ its "elements" approach to lesser included offenses. Instead, the Eighth Circuit cases seem to employ the pre-*Schmuck* "inherent relationship" approach.

equivalent of simple battery.... As such, it contemplates some form of contact, an element of that offense which, strictly speaking, is not required of assault resulting in serious bodily injury.") Having correctly perceived that assault by striking, beating, or wounding requires proof of an additional element, the district court correctly denied defendant's request that the jury be instructed on assault by striking, beating, or wounding. *See United States v. Colon,* 268 F.3d 367, 374 (6th Cir. 2001)("Where ... the lesser included offense requires an element not required for the greater offense, no instruction is to be given.")(citing *Schmuck v. United States,* 489 U.S. 705 (1989)).

Moreover, for the same reason that the district court was correct in determining that assault by striking, beating, or wounding was *not* a lesser included offense of assault resulting in serious bodily injury, the district court was correct in determining that simple assault *is* a lesser included offense of assault resulting in serious bodily injury. The elements of simple assault are a subset of the elements of assault resulting in serious bodily injury. The district court therefore properly instructed on simple assault.

### III.  Defendant's Sentencing

Defendant challenges his sentencing on three grounds. First, defendant argues that the district court abused its discretion in imposing a two-level enhancement for obstruction of justice based on its finding that defendant had perjured himself. Second, defendant argues that the district court abused its discretion in granting the government's motion for an upward departure. Finally, defendant contends that the district court erred in finding that it lacked the discretion to grant a downward departure based on the fact of defendant's pre-offense incarceration.

#### A.  The Two-Level Enhancement for Obstruction

The district court's offense level enhancement for obstruction is subject to a trifurcated standard of review. First, the district court's factual determination that defendant

testified falsely about material matters - and that he did so intentionally and not because of confusion, mistake, or memory lapse - is reviewed for clear error. *United States v. McDonald,* 165 F.3d 1032, 1033-34 (6th Cir. 1999). Second, the determination that the specific conduct constituted obstruction of justice is a mixed question of law and fact, which is reviewed de novo. *Id.* Finally, because the enhancement is mandatory, its application is reviewed de novo. *Id.*

The district court's factual determination that defendant committed perjury is well-supported by the record and is not clearly erroneous. The district judge took great pains at the sentencing hearing to lay out his reasons for believing that the defendant had perjured himself as defined under U.S.S.G. §3C1.1 and *United States v. Dunnigan,* 507 U.S. 87 (1993). Because perjury qualifies as obstructing conduct, and because the district court did apply the enhancement, the district court did not err.

#### B.  The Upward Departure

Congress recently altered the relevant standard of appellate review of district courts' departure decisions. As noted by one of our sister circuits:

> Prior to the enactment of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act of 2003, Pub.L. No. 108-21, 117 Stat. 650 (2003), we would have reviewed the district court's upward departure for an abuse of discretion. Section 401(d) of the PROTECT Act, however, requires that we review de novo whether the district court has complied with the Act's requirement that the reasons for departure must be stated with specificity in the written order of judgment and commitment and whether the [district court's] departure was based on an impermissible ground.

*United States v. Tarantola,* __ F.3d __, 2003 WL 21347112, at *3 (8th Cir. June 11, 2003).

"Because we would affirm the district court's upward departure in this case under either standard of review, we may assume without deciding that there is no legal barrier preventing Congress from changing the standard of review and then applying that new standard to a pending appeal." *Id.* The district court's decision to depart upwards was based upon several factors, some of which are encouraged factors under the Guidelines and some of which are unmentioned factors. Most prominently, the district court relied on what it deemed to be the understated nature of defendant's criminal history category - an "encouraged" factor under U.S.S.G. § 4A1.3. Based on the defendant's well-documented history of violent misconduct, the district court concluded that category III understated both the seriousness of defendant's past misconduct and the potential for recidivism, and found an upward departure to category V appropriate. Also, the district court highlighted the prison setting of defendant's offense and, by inference, the victim's status as a "vulnerable victim" under U.S.S.G. §3A1.1 as an additional encouraged factor.

In short, the written judgment, presentence report, and sentencing transcript provide more than ample support for the district court's finding that defendant's offense fell outside the heartland of typical assault cases under 18 U.S.C. § 113(a).[2] The district court's upward departure was justified.

---

[2] The PROTECT Act now requires the sentencing court to provide in the written order of judgment the "specific reason" for departing from the guidelines. Pub.L. No. 108-21 § 401(c)(1), 117 Stat. 650 (2003)(amending 18 U.S.C. § 3553(c)). The defendant in this case was sentenced before the PROTECT ACT was enacted, however, and thus no such "specific reason" was outlined in the order of judgment. The district court's specific reasons were, however, outlined in the other cited materials and are sufficient to allow review of the decision to depart. *See United States v. Aguilar-Lopez,* 329 F.3d 960, 963 (8th Cir. 2003)(noting that "the district court had no obligation to provide written reasons at the time it sentenced [the defendant], but the written statement it furnished [was] sufficient ... to allow review of the decision to depart").

C. The District Court's Discretion to Depart Downward Based Upon Defendant's Pre-Offense Incarceration as an Immigration Detainee

"We review a district court's belief that it lacked the authority for a downward departure under the Sentencing Guidelines under an abuse of discretion standard." *United States v. Coleman,* 188 F.3d 354, 357 (6th Cir. 1999)(citing *Koon v. United States,* 518 U.S. 81, 99-100 (1996)). Since, however, we are evaluating the district court's determination that a factor is categorically proscribed, as a matter of law, from consideration under the guidelines, we give no deference to the district court's analysis because "the abuse of discretion standard includes review to determine whether a court was guided by an erroneous legal conclusion" and "[a] district court by definition abuses its discretion when it makes an error of law." *Id.* (citing *Koon,* 518 U.S. at 99-100); *see also United States v. Taylor,* 286 F.3d 303, 305 (6th Cir. 2002)(noting that "an erroneous legal determination is always an abuse of discretion").

Both the government and the defendant moved for departures, and the parties' respective motions were addressed in sequence at defendant's sentencing hearing. In seeking a downward departure, defendant sought credit for the two years he had been incarcerated already (as an immigration detainee) at the time of his offense. At defendant's sentencing hearing, the district court summarily denied defendant's motion. As the court explained: "As to the downward departure, the Court will deny the motion for a downward departure. The Court is of the belief that there is nothing either in the Sentencing Guidelines or in the law that would allow [the Court] to depart downward." The court then went on to consider the government's motion for an upward departure, a motion the court granted.

In the final analysis, despite the government's attempts to paint them as innocuous, the district court's comments are pointed and reflect a belief that the court lacked discretion to depart downward. This, however, is error.

In effect, the district court inverted the rule. The district court appeared to assume that, absent the Guidelines' express reference to a particular factor, the court lacked authority to depart downward on that basis; the rule, however, is the opposite - unless the Guidelines specifically proscribe consideration of the factor, then the factor is to be considered. This rule was articulated plainly and without exception in *Koon v. United States,* 518 U.S. 81 (1996)("We conclude, then, that a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor. If the answer is no - as it will be most of the time - the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline.") Moreover, what little case law there is on the subject makes clear that district courts *can* depart downward on the basis of factors relating to immigration-related factors. *See, e.g., United Stated v. Farouil,* 124 F.3d 838 (7th Cir. 1997)(holding that the district court could consider increased sentence severity resulting from deportable alien status); *United States v. Charry Cubillos,* 91 F.3d 1342 (9th Cir. 1996)(holding that defendant's status as a deportable alien could be considered by the district court at sentencing).

Clearly, then, because previous incarceration as an immigration detainee is not categorically proscribed by the Guidelines, the district court *did* possess the discretion to depart downward on that basis. The district court should have gone on to determine whether defendant's status as a previously-confined immigration detainee removed the case from the heartland of the applicable Guideline. Because the district court did not do this, we must reverse and remand.

The government advances two arguments in an effort to color the district court's comments as insignificant verbiage. Although they are not without merit, ultimately both fall short.

First, the government notes that it is "presume[d] that district court judges are aware of their discretion to depart downward under the sentencing guidelines," *United States v. Shabazz,* 263 F.3d 603, 611 (6th Cir. 2001), and that this court has held that ambiguous comments in the nature of "expressions of frustrations with a sentence range prescribed by the Guidelines, such as 'my hands are tied by the Guidelines' or 'if it were up to me ...' or 'if it were not for the Guidelines, I would ...' or [other] such comment[s]" are insufficient to support a conclusion that the district judge was unaware of his discretion to depart downward. *Id.* In the instant appeal, however, court's comments at the sentencing hearing are far less murky. Though there is - as the government notes - a presumption to the contrary, it is difficult to construe the district court's statement that "there is nothing either in the Sentencing Guidelines or in the law that would allow me to depart downward" as anything less than a belief on the part of the district court that it had no discretion to depart downward. Also, other circuits have found language that is much more circumspect sufficient to rebut the presumption of knowledge. *See, e.g., Farouil,* 124 F.3d 838.

Alternatively, the government contends, the district court's decision to depart upward effectively "mooted" defendant's motion to depart downward. "An argument that the court mistakenly thought it lacked the power to depart is inapplicable to a case where the Court did depart," argues the government. In support of its contention, the government cites *United States v. Haroturian,* 920 F.2d 1040 (1st Cir. 1990). In that case, the First Circuit took pains to note that departures are necessarily singular and that, by definition, there can be but one departure (upward or downward, but not both).

But the government's argument in this respect misses its mark. For one, though the cited case, *United States v. Haroturian*, did address the "singularity" of departures, it did so in a different context altogether. Far from determining that an upward departure somehow "mooted" review of a

downward departure denial, the First Circuit in *Haroturian* addressed the singular nature of departures to establish that only departure determinations themselves are appealable - not the court's interim calculations on which the departures are based. Second, the government's logic does not withstand scrutiny: it simply does not follow that because the district court departed upward it knew that it had the discretion to depart downward. The fact is, had the district court been aware of its discretion to depart downward, it may well have tempered the degree of the upward departure or denied the government's motion to depart upward altogether.[3]

This case shall be remanded for reconsideration of the court's departure decision, this time with knowledge of the discretion it previously thought it lacked. On remand, the district court should do as the Supreme Court instructed in *Koon:* "If a factor is unmentioned in the Guidelines, the court must, after considering the 'structure and theory of both relevant individual guidelines and the Guidelines taken as a whole,' decide whether it is sufficient to take the case out of the Guidelines' heartland." *Koon v. United States,* 518 U.S. 81, 96 (1996)(citations omitted).

### IV. Conclusion

For the reasons outlined above, defendant's conviction is affirmed. His sentence, however, is **REVERSED** and this matter **REMANDED** for further proceedings not inconsistent with this opinion.

---

[3] The Court recognizes that, given that the district court sentenced defendant to the maximum sentence (departing upward), it is questionable whether the district court's "new-found" discretion will change its departure determination. Nonetheless, out of an abundance of caution, we feel remand is appropriate.