**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0005n.06

No. 14-1400

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 05, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| JAMES B. JACKSON, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: DAUGHTREY, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** On May 1, 2013, police officers responded to a call reporting gunshots fired around the Stonegate apartment complex in Flint, Michigan. There, they found James Jackson, who had, during the course of a fight, fired multiple rounds of ammunition into the complex. On June 5, 2013, a federal grand jury returned a two-count indictment against Jackson, charging him with violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) on two different occasions, the May 1, 2013 fight and a separate incident that occurred on October 8, 2009. Jackson pleaded guilty to both counts on November 7, 2013. At Jackson's sentencing hearing, the district judge determined Jackson's Guidelines range to be 84 to 105 months, based on a total offense level of 25 and a criminal history category of IV. Jackson ultimately received a 94-month sentence on each count to be served concurrently, which was below the 120-month statutory maximum.

Jackson contends on appeal that his sentence is procedurally and substantively unreasonable because the district judge failed to extend the Supreme Court's decision in *United States v. Alleyne* to apply to changes in his Sentencing Guidelines range. In addition, Jackson objects to receiving a two-level sentencing enhancement for obstruction of justice. Both claims are without merit. Accordingly, we **AFFIRM** the district court's sentence.

## I. BACKGROUND

In 2002, Jackson was convicted of unlawfully driving away an automobile and fleeing and eluding police in the third degree, both felonies under Michigan law. Presentence Report ("PSR") at ¶ 33.[1] Seven years later, in 2009, police officers responded to a call from a security officer at the Stonegate apartment complex. When the police arrived, the security officer "reported that he had heard several shots fired in the apartment complex," and had detained Jackson, who he found had a loaded semiautomatic handgun on his person. *Id.* at ¶ 9; R. 33 (Plea Hr'g Tr. at 16) (Page ID #97). In the latest incident, again occurring at the Stonegate apartment complex, a police investigation revealed that Jackson had used two handguns to fire approximately ten rounds of ammunition into the residence. PSR at ¶ 14; R. 34 (Sentencing Hr'g Tr. at 32) (Page ID #136). Following this incident, a federal grand jury returned a two-

---

[1]Jackson has not contested the facts reported in his Presentence Report. *See* Appellant Br. at 4 ("Defendant never contested at the proceedings below the fact that he had possessed the firearms on both occasions and that he was in fact a convicted felon."); *see also United States v. Adkins*, 429 F.3d 631, 632–33 (6th Cir. 2005) (concluding that failure to object to one's presentencing report constitutes acceptance of the factual allegations contained within the report).

count indictment charging Jackson with being a felon in possession of a firearm in 2009 and 2013, in violation of 18 U.S.C. § 922(g)(1). R. 15 (Indictment at 1-4) (Page ID #21-24).

After his arrest, Jackson agreed to waive his *Miranda* rights and speak to the FBI. R. 36-2 (Gov't Sentencing Mem. Ex. A at 3) (Page ID #162). During his conversation with Special Agent Thomas Sondgeroth, Jackson stated that he had given the handguns he used in the 2013 incident to Christopher Davis. R. 34 (Sentencing Hr'g Tr. at 19) (Page ID #123). Jackson, however, had done no such thing. As he revealed later in a letter to David Coppage:

> [W]e can't talk about the toys cause I don't want them catch on cause they really want the guns cause they been used in a crime but when they asked me where they was I told them I sold them to some random person on the northside so just hold them down for me oh yeah take all the bullets out so the springs in the clips don't get messed up or worn out . . . .

R. 36-4 (Gov't Sentencing Mem. Ex. D at 1) (Page ID #165). Yet Jackson did not retract his statement to Sondgeroth, "caus[ing] [FBI] agents then to go and investigate who Mr. Davis was, where he lived, as well as perform a consent search of Mr. Davis's household." R. 34 (Sentencing Hr'g Tr. at 19) (Page ID #123). After intercepting Jackson's letter to Coppage, law-enforcement officials searched and recovered the firearms in question at Coppage's residence. PSR at ¶ 15.

On November 7, 2013, Jackson pleaded guilty to both counts in his indictment. R. 33 (Plea Hr'g Tr. at 16) (Page ID #97). In calculating Jackson's Sentencing Guidelines range, Jackson's PSR recommended that he be given a base offense level of 20. *See* PSR at ¶ 22; U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2K2.1(a)(4)(A) (2013). The PSR also

recommended that Jackson's base offense level be increased by eight points—two points for conduct involving four firearms, four points for possessing a firearm in connection with another felony offense, and two points for obstruction of justice. PSR at ¶¶ 23-28. Finally, the PSR recommended a three-level reduction for acceptance of responsibility, resulting in a total offense level of 25. *Id.* at ¶ 30-32.

After discussing and dismissing Jackson's objections at his sentencing hearing, the district judge adopted the PSR's recommendations in full and sentenced Jackson to 94 months of imprisonment. R. 34 (Sentencing Hr'g Tr. at 38) (Page ID #142).

## II. DISCUSSION

**A.** *Alleyne*

We review de novo whether the district judge erred in declining to extend *Alleyne* to apply to changes in the defendant's Sentencing Guidelines range. *See United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007) ("In reviewing the district court's calculation of the Guidelines, we still review the district court's factual findings for clear error and its legal conclusions *de novo*.").

Jackson argues that the district judge erred in calculating his total offense level based on a base level of twenty, a two-level enhancement for possessing four firearms, and a four-level enhancement for possessing firearms in the commission of another felony. According to Jackson, these determinations, like the provision that increased the statutory mandatory minimum in *Alleyne*, are essential facts of the crime that must be submitted to the jury.

This argument, however, misreads *Alleyne*. In *Alleyne*, the Supreme Court noted that "[i]n holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013). The Court went on to cite with approval language from *Apprendi*, which noted that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." *Id.* (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (emphasis in original)).

In a number of subsequent cases, we have followed the Court's guidance in *Alleyne*, and refused to extend the decision to apply to sentencing-level enhancements under the Sentencing Guidelines. *See, e.g.*, *United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013) ("That brings us to Johnson's challenge to the district court's finding with respect to drug quantities that resulted in a Guidelines range above the minimum but below the maximum sentence. We find no constitutional error, however, because *Alleyne* did not extend *Apprendi* to facts that do not increase the prescribed statutory penalties."); *see also United States v. Smith*, 749 F.3d 465, 487 (6th Cir. 2014) ("The Supreme Court's decision in *Alleyne v. United States* extended *Apprendi* by holding that 'facts that increase mandatory minimum sentences must be submitted to the jury.' But both *Apprendi* and *Alleyne* took care not to disturb the district court's discretionary

fact-finding in other circumstances.") (citation omitted); *United States v. James*, 575 F. App'x 588, 595 (6th Cir. 2014) (citing additional cases). In this case, Jackson was sentenced to 94 months of imprisonment, a term between the mandatory minimum (0 months) and the mandatory maximum (120 months). 18 U.S.C. § 924(a)(2); PSR at ¶ 62. The sentencing enhancements that the district judge applied did not change these statutorily prescribed ranges, but only the Guidelines range.

The district judge did not, moreover, err in his application of each enhancement. Following U.S.S.G. § 2K2.1(a)(4)(A), the district judge began his analysis by determining Jackson's base offense level to be 20, for Jackson had committed an offense involving possession of a firearm subsequent to a crime of violence. Jackson does not contest his previous conviction for third-degree fleeing and eluding. Appellant Br. at 4. And in *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004), we determined that third-degree fleeing and eluding constituted a crime of violence.

Next, the district judge applied a two-level enhancement, per U.S.S.G. § 2K2.1(b)(1)(A), because the offense conduct involved four firearms: one firearm in the May 2009 incident and three firearms in the May 2013 incident. At his plea hearing, Jackson admitted to carrying one firearm in October 2009 and two firearms in May 2013. R. 33 (Plea Hr'g Tr. at 15-17) (Page ID #96-98). While searching David Coppage's residence, police uncovered the two firearms involved in the May incident, inside a gun case that also included James Jackson's social security card, his birth certificate, a DigiWeigh scale, and a third firearm (a loaded .44-caliber Smith &

Wesson revolver). PSR at ¶ 15. At most, Jackson could contest inclusion of this last firearm in the offense conduct. Yet, any error committed by the district judge would have been harmless. Even excluding this firearm, the offense conduct would still have involved three firearms; the Sentencing Guidelines prescribe a two-level enhancement for all conduct involving between three and seven firearms. U.S.S.G. § 2K2.1(b)(1)(A).

Finally, the district judge applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), for possessing a firearm in connection with another felony offense. As the accompanying comments note, "'[a]nother felony offense,' for purposes of subsection (b)(6)(B), means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n.14(C). Here, Jackson has not contested that he intentionally fired multiple rounds into a residential apartment complex. Under Michigan law, "an individual who intentionally discharges a firearm at a facility that he or she knows or has reason to believe is a dwelling or a potentially occupied structure . . . is guilty of a felony punishable by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both." Mich. Comp. Laws § 750.234b(1).

In sum, the district judge did not err in declining to extend *Alleyne*. Nor did he err in applying the various enhancements to Jackson's Guidelines range. Jackson's sentence does not involve double counting; it is neither substantively nor procedurally unreasonable.

7

**B. Obstruction of Justice**

Enhancements for obstruction of justice are subject to a two-part standard of review. "First, the district court's factual determination that defendant testified falsely about material matters—and that he did so intentionally and not because of confusion, mistake, or memory lapse—is reviewed for clear error. Second, the determination that the specific conduct constituted obstruction of justice is a mixed question of law and fact, which is reviewed de novo." *United States v. Camejo*, 333 F.3d 669, 675 (6th Cir. 2003) (citation omitted); *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (applying *Camejo* analysis post-*Booker*).

Jackson's obstruction of justice challenge fails on its face. The accompanying comments to U.S.S.G. § 3C1.1 provide several examples of covered conduct. These include "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence)" and "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1 cmt. nn.4(D), 4(G). Jackson's conduct could fall within either of these examples. As revealed by his letter to David Coppage, Jackson intended to—and did— deliberately mislead law-enforcement officials regarding the location of the handguns at issue. Moreover, Jackson's letter reveals that Jackson knew that the handguns were a material aspect to the government's case, and that he sought to conceal them from the government's investigation.

R. 36-4 (Gov't Sentencing Mem. Ex. D at 1) (Page ID #165) ("I don't want them catch on cause they really want the guns cause they been used in a crime.").

Jackson's claim that "his letter from jail helped them [the police] get another gun off the street" is baseless. Appellant Br. at 14. Law-enforcement officials recovered the firearms in spite of—not because of—Jackson's efforts. In addition, Jackson contends that he was awarded a three-level reduction for acceptance of responsibility—a reduction that is inconsistent with a two-level increase for obstruction of justice. *Id.* Jackson is incorrect. In other instances, we have awarded both a reduction for acceptance of responsibility and an increase for obstruction of justice. *See, e.g.*, *United States v. Gregory*, 315 F.3d 637 (6th Cir. 2003). In those cases, we considered the defendant's conduct with respect to the sentencing reduction and the sentencing enhancement separately. *Id.* at 639–41. The same reasoning applies here: Jackson initially impeded the investigation by providing false information, but eventually decided to cooperate with the government. The district judge correctly applied a two-level enhancement for obstruction of justice in this case.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Jackson's sentence.