RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee*,

             *v.*

ANDREW MARCUS JOHNSON,
             *Defendant-Appellant.*

No. 12-2138

>

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 2:11-cr-00024-1—R. Allan Edgar, District Judge.

Decided and Filed:  October 7, 2013

Before:  BATCHELDER, Chief Judge; GUY and MOORE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Michael M. Brownlee, BROWNSTONE, P.A., Winter Park, Florida, for
Appellant.  Maarten Vermaat, UNITED STATES ATTORNEY'S OFFICE, Marquette,
Michigan, for Appellee.

_____

**OPINION**

_____

        RALPH B. GUY, JR., Circuit Judge.  Defendant Andrew Johnson pleaded guilty
to one count of conspiracy to distribute and to possess with intent to distribute 280 grams
or more of cocaine base.  *See* 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(iii).
Appealing his sentence, Johnson attacks the district court's determination that his
relevant conduct involved the distribution of nearly 4.5 kilograms of cocaine base as
both clearly erroneous and a violation of his Sixth Amendment rights.  For the reasons
that follow, we affirm.

1

# I.

Johnson's Rule 11 Plea Agreement provided that, with the dismissal of two substantive distribution counts and other state weapons charges, Johnson would plead guilty to having conspired with others—including seven named cooperating coconspirators—to distribute and possess with intent to distribute at least 280 grams of cocaine base in Marquette County, Michigan, beginning in 2007 and continuing through July 2010. Johnson acknowledged that pleading guilty to this 280-gram quantity would trigger a mandatory minimum 10-year sentence and a maximum sentence of life imprisonment. There was no stipulation regarding drug quantities greater than 280 grams, although it was understood that Johnson could contest the drug quantity being attributed to him for purposes of sentencing without jeopardizing his ability to receive an acceptance-of-responsibility adjustment.

The presentence report detailed Johnson's involvement in the conspiracy, including his participation both in bringing cocaine base from Chicago to Marquette and in selling it to coconspirators and confidential informants. In fact, the two dismissed counts of distribution were based on Johnson's indirect involvement in two controlled buys of crack cocaine made through coconspirator Robert Petrocik. Proffers from Petrocik and several other cooperating coconspirators implicated Johnson directly and indirectly in the distribution of cocaine base in Marquette. The most significant proffer for purposes of this appeal, however, was made by coconspirator Ashley Rose Walker detailing how she and Johnson moved cocaine base from Chicago to Marquette three to four times per month from October 2008 through July 2010.

The presentence report prepared for Johnson sought to avoid possible double counting with respect to drug quantity by including only those quantities of cocaine base attributed to Johnson directly by coconspirators Crystal Abbott (70 grams), Petrocik (140 grams), and Walker (4,368 grams). Together, these amounts easily exceeded the 2.8 kilograms (roughly 100 ounces) of cocaine base necessary to trigger a base offense level of 36. *See* United States Sentencing Guidelines Manual (USSG) § 2D1.1(c)(2) (2012) ("At least 2.8 KG but less than 8.4 KG of Cocaine Base"). Johnson objected,

arguing that his base offense level should be 34 because he should be held responsible for *less* than 2.8 kilograms (or 100 ounces) of cocaine base. *See* USSG § 2D1.1(c)(3) ("At least 840 G but less than 2.8 KG of Cocaine Base").[1]

Since the quantities in Walker's proffer alone were both necessary and sufficient to support a base offense level of 36, it is not surprising that the other quantities of cocaine base were not objected to by Johnson or relied upon by the district court. Walker estimated that she and Johnson moved a total of 160 ounces of cocaine base from Chicago to Marquette as follows: (1) 16 ounces from October 2008 through February 2009 (Walker drove Johnson in her Stratus); (2) 59 ounces from March to September 2009 (Walker and Johnson took the bus together); (3) 72 ounces from September 2009 to mid-April 2010 (Walker made trips mostly with Johnson in her Yukon SUV); and (4) 13 ounces from mid-April 2010 through July 2010 (Walker drove the Yukon alone).

In fact, at sentencing, Johnson expressly conceded that he should be held accountable for the quantities that Walker estimated they distributed during the first two periods (a total of 75 ounces or 2.1 kilograms); hence, his stipulation to a base offense level of 34. However, Johnson contested the quantities that Walker estimated they moved during the latter two periods. After an evidentiary sentencing hearing, at which Walker and Johnson's mother testified, the district court found by a preponderance of the evidence that Johnson was directly involved with Walker in the distribution of a slightly more conservative estimate of 82 ounces of cocaine base during the disputed period.

In total, the district court found that Johnson's relevant conduct involved the distribution of at least 157 ounces (or 4.45 kilograms) of cocaine base and that he therefore had a base offense level of 36. Further adjustments (which are not in dispute) lowered his offense level to 34, which, when combined with a criminal history category of IV, produced a Guidelines range of 210-262 months. The district court sentenced

---

[1]Although additional quantities of marijuana were included in the presentence report, which required conversion of the cocaine base quantities to a marijuana equivalency, it is clear that the district court did not include any marijuana in the drug quantity calculation or rely on conversion to a marijuana equivalency in determining the base offense level.

Johnson to a 210-month term of imprisonment, to be followed by a five-year term of supervised release.  This appeal followed.

**II.**

Johnson's attack on the correctness of the Guidelines calculation—a challenge to the procedural reasonableness of his sentence—is reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007).  If the district court miscalculates the Guidelines range, the resulting sentence is procedurally unreasonable.  *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007).  "'A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous.'"  *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009) (citation omitted).

When, as here, the precise quantity of drugs involved is uncertain, the district court must "err on the side of caution" and may only hold a defendant accountable for a specific  quantity for which he is more likely than not actually responsible.  *United States v. Walton*, 908 F.2d 1289, 1301, 1302 (6th Cir. 1990).  An estimate will suffice as long as it is supported by a preponderance of the evidence.  *Id*. at 1301; *see also Young*, 553 F.3d at 1051.

Having conceded responsibility for the 75 ounces of cocaine base attributed to him for the periods covering October 2008 through September 2009, Johnson cannot (and does not) challenge the district court's inclusion of that amount in the relevant conduct determination.  *See United States v. Pruitt*, 156 F.3d 638, 648 (6th Cir. 1998).  Walker, who had distributed drugs with someone else previously, began driving Johnson to Chicago to pick up cocaine base at the end of September 2008.  Johnson paid Walker to drive him to Chicago in her Stratus to pick up cocaine base eight to ten times during the period from October 2008 through February 2009.  They then traveled together to Chicago by bus to pick up cocaine base from March 2009 through September 2009.  Walker described carrying as much as $5,000 or $6,000 in cash in her purse.  Near the end of that period, sometime in June or July 2009, Walker began paying Johnson to obtain an extra ounce of cocaine base to distribute for herself.  With Johnson's

concession, and since the district court "may accept any undisputed portion of the presentence report as a finding of fact," Fed. R. Crim. P. 32(i)(3)(A), the district court did not err in finding Johnson's relevant conduct included at least 75 ounces of cocaine base.

The question that remains is whether it was clear error for the district court to find that Johnson continued to be involved with Walker in the distribution of an additional 82 ounces of cocaine base during the two remaining periods: October 2009 until mid-April 2010 (72 ounces); and mid-April 2010 through July 2010 (10 ounces). Walker testified that she purchased a Yukon SUV in October 2009, which was used to distribute cocaine base from the Chicago area to the Marquette area three or four times per month until her arrest at the end of July 2010. Specifically, Walker was arrested on July 27, 2010, after being stopped while driving the Yukon and found to be in possession of two ounces of cocaine base, some marijuana, and several Moneygram receipts. Walker identified Johnson as her source at the time of her arrest, and gave a protected proffer to the government in October 2010.

At sentencing, Walker testified—consistent with her earlier proffer—that during the six-month period from October 2009 through mid-April 2010, she and Johnson transported four to six ounces of cocaine base, three or four times per month, for a total of 72 ounces (4 oz. x 18 trips). Walker testified that Johnson traveled with her to Chicago on most of those trips, except on four or five occasions when he was already in Chicago. Walker maintained that Johnson was living with her as of October 2009, but she conceded on cross-examination that Johnson may have stayed in Chicago for extended periods to take care of his son.

Two events marked the dividing point between the last two contested periods. First, Johnson was arrested in Chicago on weapons charges on April 12, 2010, after which he refused to travel with Walker and she transported the drugs alone until her arrest in July 2010. Second, Walker was stopped in a rental car on April 13, 2010, and $3,600 that she claimed to have to bail out an unnamed boyfriend was seized. After that seizure, Walker initially was able to get only one ounce of cocaine base at a time, but

that increased to two ounces in early July 2010.  In all, Walker estimated that she made seven or eight trips with cocaine base from mid-April through July 2010, for a total of 10 ounces.  Together, the 72 ounces and 10 ounces totaled 82 ounces of cocaine base.

In an effort to undermine Walker's testimony, Johnson's mother, Sharon Moore, testified that although her son had been living with Walker near Marquette, he had moved back to Chicago by the end of August 2009.  Moore explained that Johnson moved back to her house in order to see his young son off to kindergarten every day while she and her husband traveled to Louisiana during September 2009.  She also specifically recalled that Johnson was in Chicago for Thanksgiving, Christmas, and Spring Break.  Moore testified that she only saw Walker in Chicago three times during this period, and each time Walker brought various personal belongings to her son.  Lastly, Moore confirmed that her son had abided by the bond restrictions that prevented him from leaving the State of Illinois after his arrest in April 2010.

Finally, defense counsel made a general attack on Walker's credibility.  Walker readily admitted that she disliked Johnson because of the trouble she got into with him, and acknowledged that she had been romantically involved with Johnson during the conspiracy.  Defense counsel asked Walker about a letter she acknowledged having written to Johnson from jail on March 20, 2011.  In four handwritten pages, the letter expressed anger toward Johnson in no uncertain terms both about her being in jail when he was not and about his involvement with another woman.  Walker admitted that she had been angry but was not anymore, and added that she wrote the letter five months after making her detailed proffer in October 2010.  In fact, the letter itself complained that Johnson had not contacted her since October.

"'[T]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable.'" *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (quoting *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004)).  The district court's credibility determinations will not be disturbed absent clear error.  *Jeross*, 521 F.3d at 570.  Here, the district court found Walker's testimony to be  credible and consistent with her earlier statements

regarding Johnson's involvement with her in the distribution of cocaine base.  The district court explained that—whether Johnson was living with his parents or just staying in Chicago for extended periods—Moore's testimony did not directly contradict Walker's account of Johnson's involvement during the contested periods.  Nor was there any evidence that Johnson withdrew from the conspiracy at that or any other point.

We find no clear error in the district court's credibility determination or the finding that Johnson should be held accountable not only for the 75 ounces that he conceded, but also for the additional 82 ounces estimated for the period from October 2009 through July 2010. Accordingly, the district court's finding that Johnson's relevant conduct involved the distribution of at least 157 ounces of cocaine base was supported by a preponderance of the evidence.

## III.

Johnson exhorts this court to adopt a new rule declaring all uncorroborated coconspirator testimony offered at sentencing to establish drug quantities and provided under a cooperation agreement to be deemed presumptively unreliable as a matter of due process.   We refused a similar request to categorically exclude from sentencing consideration a coconspirator's hearsay statements as "inherently" or "presumptively" unreliable. *See United States v. Moncivais*, 492 F.3d 652, 660 (6th Cir. 2007).  It is sufficient that the Guidelines and due process require that evidence considered at sentencing have "'sufficient indicia of reliability to support its probable accuracy.'" *Id.* at 659 (quoting USSG § 6A1.3(a)); *see also United States v. Silverman*, 976 F.2d 1502, 1504 (6th Cir. 1992) (en banc).  The minimum-indicia-of-reliability standard is a "'relatively low hurdle' that asks only that '*some* evidentiary basis beyond mere allegation in an indictment be presented to support consideration of such conduct as relevant to sentencing.'" *Moncivais*, 492 F.3d at 659 (citations omitted).

Moreover, such a rule would have no application here as the record demonstrates that both Walker's out-of-court proffer and her testimony at sentencing was detailed, consistent with earlier statements, and corroborated by other facts.  Not least of the corroborating facts was Johnson's own concession that he participated with Walker in

the regular movement of cocaine base from Chicago from October 2008 through September 2009.  Walker's testimony was sufficiently reliable to be admissible at sentencing, and it was not error for the district court to consider it.  *See United States v. Stout*, 599 F.3d 549, 558-59 (6th Cir.), *cert. denied*, 131 S. Ct. 351 (2010).

## IV.

Johnson asserts for the first time on appeal that he was sentenced in violation of the Sixth Amendment and due process rights recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 477, 490 (2000).  He acknowledged that this claim was foreclosed at the time by *Harris v. United States*, 536 U.S. 545 (2002), but raised it nonetheless in anticipation of the subsequent overruling of *Harris* in *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  Johnson seems to challenge the judicial fact-finding with respect to the district court's quantity determination.  Since there was no objection at the sentencing hearing to the determination being made by a preponderance of the evidence, this claim is reviewed for plain error.  *See United States v. Yancy*, 725 F.3d 596, 600-01 (6th Cir. 2013) (explaining that plain error applies to forfeited claims even when "'well-settled' law (destined to be overruled) made objection 'futile'").

As *Alleyne* explains, "*Apprendi* concluded that any 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed' are elements of the crime."  133 S. Ct. at 2160 (quoting *Apprendi*, 530 U.S. at 490).  While *Apprendi* concerned judicial fact-finding that increased the statutory maximum sentence, the Court in *Alleyne* held that "the principle applied in *Apprendi* applies with equal force to facts increasing the mandatory minimum."  *Id*.  In other words, "*Apprendi*'s definition of 'elements' necessarily includes not only facts that increase the ceiling, but also those that increase the floor."  *Id*. at 2158 (plurality opinion).

In this case, however, the "fact" that resulted in Johnson's mandatory minimum sentence—that the conspiracy involved 280 grams or more of cocaine base—was charged in the indictment and established as part of his guilty plea.  We have recognized that *Alleyne*'s extension of *Apprendi* to facts that increase a minimum statutory sentence left undisturbed our decisions holding that a defendant's knowing admission of the facts

necessary for an enhanced sentence is fatal to his *Apprendi* claim.  *See Yancy*, 725 F.3d at 601 (citing cases).  As we explained in *Yancy*, this is consistent with the Supreme Court's description of the *Apprendi* rule: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *United States v. Booker*, 543 U.S. 220, 244 (2005).

That brings us to Johnson's challenge to the district court's finding with respect to drug quantities that resulted in a Guidelines range above the minimum but below the maximum sentence.  We find no constitutional error, however, because *Alleyne* did not extend *Apprendi* to facts that do not increase the prescribed statutory penalties.  Any doubt on this score is settled by the observation in *Alleyne* of what its holding did *not* entail: "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury.  We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2163 (citing *Dillon v. United States*, 130 S. Ct. 2683, 2692 (2010); *Apprendi*, 530 U.S. at 481).  Even aside from Johnson's concession with respect to a portion of the drug quantities attributed to him, the district court's factual determination with respect to the additional quantities did not violate his Sixth Amendment rights as articulated in *Alleyne*.  Accordingly, we find no error, plain or otherwise, in this regard.

**V.**

Defendant's sentence is **AFFIRMED.**