NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  15a0189n.06

No. 13-4473

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 10, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| JACK A. MORRIS, | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:  SILER, BATCHELDER, and ROGERS, Circuit Judges.

PER CURIAM.  A jury convicted Jack A. Morris of several drug and firearm offenses. Morris now appeals those convictions and his 528-month sentence.  We affirm.

After an investigation, which included five controlled buys, law enforcement executed a search warrant at Morris's house and recovered 36 grams of cocaine, 146 tablets containing oxycodone, 790 tablets containing hydrocodone, 62 Adderall tablets, 2.45 kilograms of marijuana, seven firearms, and $10,773 in cash.  A federal grand jury returned an indictment charging Morris and two co-defendants with conspiracy to distribute and to possess with intent to distribute cocaine, oxycodone, and marijuana, in violation of 21 U.S.C. § 846, along with other drug and firearm offenses.  Morris proceeded to trial, during which his co-conspirators testified against him.  The jury acquitted Morris of some counts but convicted him of the conspiracy count; nine counts of distribution of or possession with intent to distribute oxycodone, marijuana,

and/or cocaine, in violation of 21 U.S.C. § 841(a); and two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

At sentencing, the district court attributed to Morris a drug quantity of 102.25 kilograms of marijuana equivalent, resulting in a base offense level of 26. Morris's total offense level of 34 and his criminal history category of I corresponded to a guidelines range of 151 to 188 months of imprisonment. The district court sentenced Morris to 168 months of imprisonment for his drug convictions after considering the sentencing factors under 18 U.S.C. § 3553(a) and, as required by statute, imposed a consecutive 60-month term for his first § 924(c) conviction and a consecutive 300-month term for his second § 924(c) conviction.

On appeal, Morris asserts that the prosecutor improperly vouched for the credibility of witnesses, that the district court improperly admitted hearsay testimony, and that, even if harmless, the cumulative effect of these errors requires reversal of his convictions. With respect to sentencing, Morris challenges the district court's drug quantity determination, its failure to consider the overall sentence, and its imposition of a twenty-five-year consecutive sentence for his second § 924(c) conviction.

Morris first contends that the prosecutor improperly vouched for the credibility of witnesses. "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).

To the extent that Morris objects to the prosecutor's references to the witnesses' agreements to cooperate and testify truthfully, "[t]his court has held that it is not improper vouching for the prosecutor to refer to the plea agreements of cooperating witnesses in the

expectation that their credibility will be at issue." *United States v. Reid*, 625 F.3d 977, 983 (6th Cir. 2010). "Nor is it improper vouching to elicit testimony that the plea agreement contains a promise to testify truthfully." *Id.*

"The potential for impropriety emerges, however, when a prosecutor explains that there is to be a recommendation to the witness's sentencing court whether the terms of the plea agreement have been adhered to." *Francis*, 170 F.3d at 550. "Because that recommendation is dependent upon whether the witness testifies truthfully, it is easy for a prosecutor to imply, either intentionally or inadvertently, that the prosecutor is in a special position to ascertain whether the witness was, in fact, testifying truthfully." *Id.* During opening statement, the prosecutor said:

> Now, myself and Mr. Dunbar, for some of these people—they're codefendants with the defendant, who pled guilty in this very courtroom—we promised them, if they cooperate and they tell the truth, that we will request a reduction from Judge Frost in their sentence, their otherwise applicable sentence. They have not been sentenced yet. Once we make that motion, the Judge can or cannot follow it. It is up to him, the sentence.

(RE 163, 7/29/13 Trial Tr. 148, Page ID # 816). The prosecutor's statement implies that his request for a sentence reduction would depend on whether he believed the witness told the truth and therefore constitutes improper vouching. *See Francis*, 170 F.3d at 551.

In addition, the following exchange took place during the prosecutor's redirect examination of Zachary Writesel:

> Q.     And before you entered into the written agreement with the Franklin County Prosecutor's Office for what amounts to immunity?
>
> A.     Yes, sir. I entered into the agreement with the Franklin County Prosecutor in December. . . .
>
> Q.     And we already established I told you that I would honor this agreement?
>
> A.     Yes, sir, and I believed you.
>
> Q.     Did I tell you what I would do if you lied?

A. You told me that you would charge me with everything that, you know, you could that I had done.

(RE 164, 7/30/13 Trial Tr. 61, Page ID # 984). The prosecutor's wording once again indicated that he would "be the arbiter of truth." *United States v. Wells*, 623 F.3d 332, 342 (6th Cir. 2010).

In determining whether the impropriety of the prosecutor's remarks was sufficiently flagrant to warrant reversal, we take into account four factors: "(1) the degree to which the conduct or remarks tended to mislead the jury or prejudice the defendant; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally put before the jury; and (4) the overall strength of the evidence against the defendant." *Reid*, 625 F.3d at 982. Morris points to two improper remarks over a five-day trial. The remarks do not appear to have been intended to prejudice Morris, but rather to accurately reflect the witnesses' agreements. In the case of Writesel's redirect examination, the prosecutor's question was in response to the defense's extensive cross-examination of Writesel challenging his credibility based in part on his cooperation agreement. Finally, the evidence against Morris—which went beyond the testimony of cooperating witnesses—was strong. The prosecutor's remarks were not flagrant. *See Wells*, 623 F.3d at 344.

Morris asserts that the district court improperly admitted hearsay testimony. Detective Matthew Fulmer testified that he debriefed a confidential informant, Richard Souder, after a controlled buy: "Mr. Souder indicated to me in passing at that point and I would later learn more that night in a telephone conversation that he had recognized the house, and he believed the house to be owned by a gentleman or resided in by a gentleman named 'Jack.'" (RE 165, 7/31/13 Trial Tr. 26-27, Page ID # 1191-92). When defense counsel made a hearsay objection, the government responded: "It's a prior consistent statement. We've already heard this from a witness that's testified. It corroborates his statement." (*Id*. at 27, Page ID # 1192). The district

court overruled the objection. Any error in the district court's admission of Detective Fulmer's testimony was harmless because it was uncontroverted that Morris owned or resided in the house identified by Souder. *See United States v. Trujillo*, 376 F.3d 593, 611 (6th Cir. 2004) (holding that, to warrant reversal, an "error must be shown not to have been harmless, *i.e.*, that it was more probable than not that the error materially affected the verdict").

Morris contends that cumulative error requires reversal of his convictions. Morris has failed to demonstrate that "the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *Id*. at 614.

With respect to sentencing, Morris first challenges the district court's drug quantity determination. We review for clear error the district court's factual findings regarding the drug quantity attributable to a defendant. *See United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013). "Where the exact amount of drugs involved is unclear, a court may approximate the quantity of drugs based on circumstantial evidence, making sure to 'err on the side of caution.'" *United States v. Valentine*, 694 F.3d 665, 672 (6th Cir. 2012) (quoting *United States v. Hernandez*, 227 F.3d 686, 699 (6th Cir. 2000)). "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by competent evidence in the record." *Id*. at 672-73 (quoting *United States v. Mahaffey*, 53 F.3d 128, 132 (6th Cir. 1995)).

In determining the drug quantity attributable to Morris, the district court included the drugs recovered during the execution of the search warrant, the drugs involved in the controlled buys, and the approximate amount of oxycodone pills sold by Morris to Writesel. Morris contends that the district court should not have relied on Writesel's testimony to determine drug quantity because his testimony was unreliable. "Testimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held

accountable." *Hernandez*, 227 F.3d at 697. "The district court's credibility determinations will not be disturbed absent clear error." *Johnson*, 732 F.3d at 582. Based on "those portions of Writesel's testimony that [are] specific enough," the district court determined that Morris sold Writesel 100 5-milligram oxycodone pills per week from May to September 2012. (RE 168, Sentencing Tr. 38, Page ID # 1592). Giving Morris "the benefit of the doubt" and making "a finding in a light most favorable to the defendant," the district court included an "ultra-conservative estimate" of 67 kilograms of marijuana equivalent in the total drug quantity. (*Id*. at 37, 39, Page ID # 1591, 1593). As the district court noted, there was testimony that Morris sold drugs to persons other than Writesel, that at least some of the oxycodone pills were 30-milligram pills, and that Morris's activities extended into April and October 2012. There was no clear error in the district court's reliance on Writesel's testimony or in its approximation of the amount of oxycodone pills sold to him by Morris.

Morris also argues that the district court erred in including in the drug quantity determination drugs possessed for personal use. Drugs possessed for personal consumption should not be included when the charge is possession with intent to distribute a controlled substance. *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003). In a conspiracy case, however, this court has held that the drugs obtained by a defendant from his supplier for his own personal use should be included. *United States v. Page*, 232 F.3d 536, 542 (6th Cir. 2000). Morris contends that this distinction between distribution and conspiracy cases does not hold up. But Morris does not challenge the inclusion of drugs obtained for his own personal use. Morris challenges the inclusion of drugs sold by him to Writesel for Writesel's personal use—drugs properly attributed to him in either a distribution or a conspiracy case.

Morris contends that the district court erred in failing to consider the overall sentence and instead determining the sentence for his drug convictions separately from the mandatory sentences for his § 924(c) convictions. This court has held that "[t]he sentencing court must determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence." *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007). Morris questions the continued validity of *Franklin* after *Spears v. United States*, 555 U.S. 261 (2009), an argument that this court has rejected. *See United States v. Franklin*, 622 F.3d 650, 655-56 (6th Cir. 2010), *vacated on other grounds*, 131 S. Ct. 1675 (2011).

Finally, Morris challenges the district court's imposition of a twenty-five-year consecutive sentence for his second § 924(c) conviction, asserting that the Supreme Court wrongly decided *Deal v. United States*, 508 U.S. 129 (1993). As Morris concedes, we are bound by the Supreme Court's decision in *Deal* that "the twenty-five-year mandatory minimum for a second or subsequent conviction attaches not only when a defendant is convicted of an offense and is later convicted of another offense, but also when a defendant is convicted of multiple offenses in the same proceeding." *United States v. Washington*, 714 F.3d 962, 970 (6th Cir.) (citing *Deal*, 508 U.S. at 135-36), *cert. denied*, 134 S. Ct. 336 (2013); *see United States v. Mongham,* 356 F. App'x 831, 839 (6th Cir. 2009). Under that controlling Supreme Court precedent, the district court properly sentenced Morris to the twenty-five-year mandatory minimum for his second § 924(c) conviction.

For the foregoing reasons, we AFFIRM the district court's judgment.