NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:   15a0305n.06

Case Nos. 14-5909/5910

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 28, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| MICHAEL A. PATTERSON, | ) | **DISTRICT OF TENNESSEE** |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |

Before:   COLE, Chief Judge; MERRITT and BATCHELDER, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.   Defendant Michael Patterson appeals his sentence, resulting from his conviction for distribution of controlled substances.   We AFFIRM.

I.

Patterson was a medical doctor with a small, private practice, from which he wrote prescriptions for controlled substances, such as oxycodone and hydrocodone.   While some of the prescriptions were arguably for legitimate medical purposes, others were not.   Specifically, Patterson sold prescriptions to a drug dealer named Christopher Pipkin at a rate of about $2,000 each.[1]   To facilitate Pipkin's business, Patterson would also write prescriptions for others, named by Pipkin, or simply leave the patient name blank so that Pipkin could fill it in himself. Patterson also directed Pipkin to those pharmacies that would accept his prescriptions and, when a pharmacy would call his office to verify the prescription, Patterson would do so.   In fact,

---

1   A typical prescription was for 90 tablets of 80-mg oxycodone, 90 tablets of 2-mg Xanax, and 90 tablets of Lortab. Pipken could then present the prescription at a pharmacy, purchase the pills at legal retail cost (approximately $1,100 without insurance), and re-sell the tablets illegally for approximately $45, $5, and $5 each, respectively.

Patterson would send Pipkin a "green light" text message at the end of the workday, to notify Pipkin when his office staff had left so that only Patterson was there to answer the phone if the pharmacy should call.

Patterson also wrote illegitimate prescriptions to women in exchange for sex. There were several such women, apparently drug addicted and typically strippers, though at least two eventually came to work for him in his office. Two others of these women overdosed, but the evidence did not link Patterson's prescriptions directly or exclusively to either of their deaths. Finally, after the state medical board revoked Patterson's license, Patterson forged prescriptions, either by back-dating his own prescription pad (using his own revoked registration number) or by actually forging the signature of his former partner on that doctor's prescription pad.

When the government eventually caught Patterson, it charged him with dozens of counts in two separate cases, one in Tennessee and the other in Mississippi. Patterson entered guilty pleas, pursuant to plea agreements, on three counts: distribution of a controlled substance (oxycodone) in violation of 21 U.S.C. § 841(a)(1); distribution of a controlled substance (hydrocodone) in violation of § 841(a)(1); and use of a revoked registration number to dispense a controlled substance, in violation of § 843(a)(2). The government dismissed all other counts. Patterson agreed to a transfer of the Mississippi case to Tennessee for consolidated sentencing.

At sentencing, the government proved a drug quantity of 655 grams of Schedule II narcotics, which was 4,388 kilograms of marijuana equivalent, for a base offense level of 34. Because Patterson wrote prescriptions for more than five people to facilitate Pipkin's pharmacy purchases and, alternatively, because Patterson was trading prescriptions to at least five women

2

for sex, the government proved a 4-level increase was due for his role as an organizer or leader. The government also agreed to a 3-level reduction for Patterson's acceptance of responsibility, bringing his total offense level to 35. Despite his relevant and somewhat extensive criminal history, Patterson's criminal history score was 0, for Category I, mostly because his prior crimes had "aged out." This produced an advisory guideline range of 168 to 210 months in prison. The government sought an upward variance (arguing that Patterson had preyed on vulnerable women, feeding their addiction for his own sexual gratification, and had shown no remorse or repentance), whereas defense counsel argued for a within-guidelines sentence (arguing Patterson's cooperation with the prosecution, his age, and his physical illness or infirmity).[2]

The court thoroughly considered the arguments, the § 3553 factors, and the voluminous evidence produced at the three days of sentencing hearings. The court also considered whether consecutive sentences might be appropriate, ultimately deciding on concurrent. Finally, the court determined that a sentence of 16 years (192 months) best fit the crime and circumstances.

On the *Bostic* inquiry, defense counsel raised one objection: that the government failed to prove the drug quantity because it failed to prove by a preponderance of the evidence that all of the prescriptions used to tabulate the drug quantity had been written for illegitimate purposes. In answer, the court cited Pipkin's testimony that Patterson had written those prescriptions to Pipkin's purchasers for illegitimate purchases; found Pipkin very credible and, conversely, found

---

2 Defense counsel also sought a 2-level downward variance, based on the impending change in the Guidelines, scheduled for November 2014, then approximately four months away. That is, defense counsel argued that a guidelines-prescribed sentence was appropriate, albeit using the guidelines as of November 2014. The district court denied that variance and Patterson appears to have abandoned it as he did not raise it here on appeal.

Patterson not credible or reliable; and, therefore, held that the government had proven both the illegitimacy of the prescriptions and the drug quantity by a preponderance of the evidence.

Patterson now appeals, challenging the procedural reasonableness of his sentence. Patterson contends the district court calculated his advisory guidelines range improperly. While he attempts to frame this as a challenge to the district court's interpretation of the Guidelines or application of the governing law, his actual claim is that the government failed to meet its burden of proof on two aspects of the Guidelines calculations: the relevant drug quantity and the applicability of a sentencing enhancement based on Patterson's role as an organizer or leader.

**II.**

A challenge to the correctness of the Sentencing Guidelines calculation is a challenge to the procedural reasonableness of the sentence, which we review for an abuse of discretion. *United States v. Johnson*, 732 F.3d 577, 580 (6th Cir. 2013) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)). If the district court miscalculates the advisory range, the resulting sentence is procedurally unreasonable. *Id.* at 581. The determination of the relevant drug quantity is ordinarily a finding of fact but when the precise quantity is uncertain, the district court may estimate so long as its estimate is supported by a preponderance of the evidence. *Id.* Similarly, the government must prove the applicability of the organizer-or-leader enhancement by a preponderance of the evidence. *United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014).

Patterson argues that, regarding the prescriptions the court used to tabulate the relevant drug quantity for his sentencing calculations, the government failed to prove that he did not write those prescriptions for a legitimate medical purpose. If so, then the drug quantity was too high,

4

his guideline calculation was incorrect, and the court sentenced him too harshly. Specifically, he argues that the district court improperly ignored the medical records and his testimony.

The district court did, largely, ignore the medical records (many of which were unavailable while the rest had been prepared by Patterson). And the district court did explicitly reject Patterson's testimony, stating for the record that it found him not credible or reliable. On the other hand, the district court stated, more than once, that it found Pipkin especially credible and believed his testimony, which was that all the prescriptions written to certain named people were for illegitimate purposes. The court used those prescriptions in its tabulation.

Patterson urges us to reject the district court's credibility determination. "[B]ut we defer to the district court's credibility determinations absent reason to believe that they are clearly erroneous." *Wright*, 747 F.3d at 411. Patterson has come nowhere close to meeting this high standard; he has, at best, identified a few vague or inconsistent statements that his counsel might have challenged while Pipkin was on the witness stand during the sentencing hearing.

Patterson also argues that the government failed to prove that Patterson was a leader or organizer as defined under U.S.S.G. § 3B1.1(a). If so, then the enhancement was improper, his guideline calculation was incorrect, and the court sentenced him too harshly. Specifically, Patterson argues he was not a leader or organizer because he did not recruit any of the participants, exert decision-making authority, or claim a larger share of the proceeds.

But the district court found that Patterson was leading or organizing the women in the prescriptions-for-sex activity because he was a doctor and was the focal point for all of the different participating women. That is, he was recruiting or inducing them, organizing them,

and exerting decision-making authority for the purpose of obtaining sexual gratification. As for the Pipkin activity, the district court found that it took both Patterson and Pipkin together to do it. Patterson did not merely sell Pipkin the prescriptions. Pipkin needed Patterson to also meet him at convenient locations, direct him to favorable pharmacies, alert him when to go to the pharmacy at a time Patterson was available to receive a call to validate the prescription, and to actually validate the illegitimate prescription. The district court found by a preponderance of the evidence that Patterson acted as an organizer and there is no basis here to reverse that finding.

### III.

For the foregoing reasons, we AFFIRM the judgment of the district court.