NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0288n.06

Case No. 16-1661

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>May 23, 2017<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| DARRYL LARON GILLIAM-FRENCH, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendant-Appellant. | ) | **OPINION** |
|  | ) |  |
|  | ) |  |

BEFORE: GIBBONS, SUTTON, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant Darryl Gilliam-French pled guilty to heroin distribution pursuant to a written plea agreement and was sentenced to 65 months' imprisonment. On appeal, Gilliam-French challenges the ratio the district court used to convert the cash and money orders found in his possession into an attributable drug weight. Gilliam-French contends that the amount of heroin attributed to him is too high and that the conversion rate makes his sentence procedurally unreasonable. For the reasons that follow, we affirm the judgment of the district court.

I.

In 2015, the government learned that Darryl Gilliam-French was selling heroin in the Escanaba, Michigan area. Thereafter, the government investigated Gilliam-French using a confidential informant. Between July and September 2015, the government set up four

controlled buys from Gilliam-French using wired informants and prerecorded cash. In each controlled buy, Gilliam-French sold the heroin in "packs," or clear-filled capsules, usually for $10 per pack.

On September 15, 2015, officers saw Gilliam-French leave his residence and meet two women at an Escanaba shopping center. When Gilliam-French returned to his apartment, officers arrested him for two counts of delivery of heroin. Officers discovered a blank $300 MoneyGram check on Gilliam-French during his arrest. During the subsequent search of Gilliam-French's apartment, officers discovered a plastic bag with five capsules of suspected heroin, one Xanax pill hidden inside an Ajax bottle, a small amount of marijuana, scales, receipts for money orders, and $13,424 in cash.

The investigation into Gilliam-French's heroin operation led to the arrest of four other suspects for delivery of controlled substances. During interviews with these suspects, officers learned that Gilliam-French's capsules contained 0.1 gram of heroin and each capsule was typically sold for $10.

On September 29, 2015, Gilliam-French was indicted on four counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). On February 1, 2016, he pled guilty to Count 1 of the indictment pursuant to a written plea agreement.

The United States Probation Office provided the parties with an initial presentence report ("PSR") in March 2016. Gilliam-French's base offense level of 24 was calculated using the drug weight attributable to him. The $13,424 found in Gilliam-French's apartment and the $300 MoneyGram found on him during his initial arrest were deemed "drug proceeds" and used to calculate the drug weight. To avoid double-counting, the proceeds from the government's

controlled buys were not used to calculate drug weight. The money was converted using a rate of $10 per 0.1 gram of heroin. This led to a drug weight of 137.24 grams.

Gilliam-French objected to the initial PSR. He objected to the use of witness and informant statements in calculating the drug weight, and to the use of one of the criminal convictions used in calculating his criminal-history score. But the final PSR, too, relied on the same "conservative estimate[s]" from the witness and informant statements and suggested that the district court resolve the drug weight issue at sentencing.

The district court conducted a sentencing hearing on May 18, 2016. At the hearing, Gilliam-French reiterated his objection to the conversion method. Gilliam-French instead argued that the quantity of heroin listed in lab reports from the four controlled buys was a more accurate representation of his heroin sales and that the lab report quantities should be the basis for converting the cash into drug weight. To perform these tests the heroin was separated from its capsule and transported in plastic bags. Heroin from two capsules from one of the controlled buys weighed in at 0.0756 grams, heroin contained in five capsules from another controlled buy weighed 0.0949 grams, and three more capsules from a third controlled buy contained 0.0407 grams of heroin. But, the lab tests were conducted to confirm only that the capsules, in fact, contained heroin. The lab report did not report the exact weight contained in each capsule because some stuck to the bags due to static.

To support its calculation that 0.1 grams of heroin were in each capsule, the government presented testimony from Michigan State Police Detective Sergeant Ron Koski. Koski testified about the four controlled drug buys with Gilliam-French. In the first, the informant purchased six capsules from Gilliam-French for $60. Two capsules sold for $15 in the second controlled buy. Gilliam-French sold six capsules for $60 in the third controlled buy. The final controlled

3

buy was three capsules for $30. Koski also testified that Gilliam-French had regularly advertised to his customers that he sold 0.1 gram capsules for $10 each. He further testified that a "pack" or "point" is common drug slang for a tenth of a gram of heroin. The court also heard testimony about the standard price for heroin in the Upper Michigan Peninsula and the Detroit area, the lab reports from the four controlled buys, and the weight contained in each capsule sold by Gilliam-French.

The court overruled Gilliam-French's objection to the drug-weight conversion method used in the PSR. In doing so, the court stated that it was undisputed that the $13,724 in cash or money orders was recovered from Gilliam-French, and that Gilliam-French was unemployed and had no visible means of supporting himself other than drug dealing. It also noted that the lab reports were conducted for the purposes of determining whether the capsules contained heroin, and that the weight of the heroin was a secondary consideration. That some of the heroin from the capsules stuck to the plastic bags in which they were transported could account for the lower quantities from the four controlled buys. However, that was not the sole basis for its sentencing decision. The court noted that the samples from the controlled buys were not necessarily representative of Gilliam-French's total drug activity. It highlighted that it had heard testimony that Gilliam-French had been selling heroin for at least two years, and that this evidence could be factored into its calculation when converting the cash into a drug weight. The district court ultimately concluded that the estimate in the PSR was accurate, if not an underestimate, of the amount of heroin for which Gilliam-French was responsible.

The court also overruled Gilliam-French's second objection to the guideline scoring from the PSR. He was sentenced to 65 months' imprisonment, within the 57-71 months Guidelines range. He now appeals.

4

II.

We review a district court's sentencing decisions for an abuse of discretion. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 40–41 (2007)). "A district court's determination of the quantity of drugs used to compute a defendant's sentence is a finding of fact that should be upheld unless clearly erroneous." *United States v. Young*, 553 F.3d 1035, 1051 (6th Cir. 2009) (quoting *United States v. Hoskins*, 173 F.3d 351, 354 (6th Cir. 1999)). The finding of fact will be clearly erroneous only where "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) (internal citation omitted).

"Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." Federal Sentencing Guidelines Manual § 2D1.1, commentary, applic. nt. 5 (U.S. Sentencing Comm'n 2016); *see also Russell*, 595 F.3d at 646. When so approximating, "the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, [and] similar transactions in controlled substances by the defendant." Guidelines § 2D1.1 nt. 5. The government "must prove by a preponderance of the evidence both the amount of money attributable to drug activity and the conversion ratio-i.e., the price per unit of drugs." *Russell*, 595 F.3d at 646 (internal citation omitted). When the exact drug weight for which a defendant is responsible is uncertain, the district court must "err on the side of caution and may only hold a defendant accountable for a specific quantity for which he is more likely than not actually responsible." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013) (internal quotations omitted).

Here, Gilliam-French does not dispute that the $13,724 in cash and currency was attributable to his drug activity. Instead, he focuses on the district court's conversion ratio. Gilliam-French argues that the conversion of the $13,724 should be based on the quantities reported by the lab from the controlled buys. For example, he offers that the calculation should be based on the 0.0756 grams of heroin extracted from two capsules in a controlled buy, yielding 0.0378 grams per capsule. Those two capsules sold for a total of $15, or $7.50 each. Dividing the $13,724 by that price yields 1,829.86 capsules, for a total of 69.17 grams, instead of 137.24 grams as the PSR and the district court concluded. This drug weight, Gilliam-French argues, would place him at a starting offense level of 20, instead of 24, and his Guidelines range would have been 36-47 months instead of 57-71 months.

We may not reverse a district court's factual finding as long as it was based on a plausible view of the evidence, even if we "would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). In light of this, "when there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous." *United States v. Ivy*, 165 F.3d 397, 401–02 (6th Cir. 1998) (quoting *United States v. Taylor*, 956 F.2d 572, 576 (6th Cir. 1992)). If a court fails to correctly calculate the Guidelines, however, the procedural error renders the sentence procedurally unreasonable. *United States v. Pawlak*, 822 F.3d 902, 905–06 (6th Cir. 2016), *abrogated on other grounds*, *Beckles v. United States*, 137 S. Ct. 886 (2017). Therefore, miscalculating the drug weight for which a defendant is responsible could result in a procedural error by placing the defendant within the incorrect Guidelines range. *See, e.g.*, *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345–46 (2016).

The district court considered the non-exhaustive list of evidence contained in Note 5 to § 2D1.1 and reasonably determined that the proper conversion ratio was $10 to 0.1 grams of heroin. The district court relied, primarily, on the testimony of Officer Koski. Koski testified to what he learned about Gilliam-French's drug sales during his investigation, and to what a "pack" or "point" usually means in drug slang. Koski testified about the four controlled buys that the government set up with Gilliam-French, and that, in three of them, Gilliam-French offered to sell 0.1 grams of heroin for $10 per capsule. He also testified about the multiple interviews conducted during the investigation with Gilliam-French's customers, all of whom stated that they had bought heroin in clear capsules containing a "pack," or 0.1 gram of heroin, for $10 apiece. Importantly, several of those customers noted that they had been buying from Gilliam-French since 2014 and that they often bought multiple capsules a day.

Koski also offered some explanation of the lower reported drug weights from the lab tests conducted on the controlled-buy capsules: the tests were conducted to confirm it was heroin, not to weigh the amount within the capsules, and, when the heroin was extracted from the capsules and transported in plastic bags, some of the heroin stuck to the interior of the plastic bags from static. He offered at least one plausible reason that there could be a discrepancy between the reported quantities and what Gilliam-French had advertised as 0.1 gram capsules of heroin. But, he acknowledged that this might not account for the entire difference between the 0.1 advertised and the weight obtained in the lab.

Gilliam-French argues that Koski's testimony "does not matter, and that the evidence from the lab reports is the "best and most reliable evidence of the weight of heroin in the capsules." Additionally, Koski's testimony may support a finding that the conversion ratio was

incorrect; he testified that one gram sold for between $125–250, making the $10 per 0.1 gram measure relatively low.

The record shows that the district court considered both Koski's testimony and the evidence from the lab reports in making its calculation and thus ultimately in its sentencing decision. The court considered "the price generally obtained for the controlled substance[,]" the proceeds from the drug sales, and similar transactions and controlled-substance sales by Gilliam-French. It also considered testimony that Gilliam-French had been selling heroin in the region since at least the summer of 2014. This fact led the court to believe that Gilliam-French was responsible for far more the $13,724 in drug proceeds, because it is unlikely he would have kept all of the proceeds sitting in his apartment in cash for more than a year and a half. Thus, even if the conversion ratio was inaccurate, the district court's estimate of Gilliam-French's drug trafficking was still a conservative, and reasonable, estimate. Taking all of the testimony into account, including the lab reports, the district court found the PSR's estimation accurate. Section 2D1.1 does not limit district courts to consideration of only currency; instead, such evidence is just an example of types of evidence that may be employed.

Gilliam-French has not shown that his reading of the evidence is the only plausible one. Therefore, the district court's finding of fact as to the drug weight was not in error. Because our review of a defendant's sentence is deferential, and because there was ample evidence in the record to support the court's calculation that Gilliam-French was responsible for at least 137.24 grams of heroin, we uphold his sentence.

### III.

For the reasons stated above, we affirm the judgment of the district court.