NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0256n.06

Case No. 21-2928

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 27, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| JOHN WILLIS ALEXANDER, | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; KETHLEDGE and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** John Alexander pleaded guilty to receiving a firearm while under indictment in violation of 18 U.S.C. § 922(n) and was sentenced to 42 months' imprisonment and three years' supervised release. On appeal, Alexander says that the court erred by finding that his offense involved a semiautomatic firearm capable of accepting a large capacity magazine. He also asserts that the oral and written judgments mistakenly imposed different special conditions on his term of supervised release. Because the district court's finding was not clearly erroneous and the judgments are substantially identical, we affirm.

BACKGROUND

Employees of Not Just Guns, a Michigan firearms retailer, reported suspicious purchases by John Alexander to the Bureau of Alcohol, Tobacco, Firearms and Explosives. Following the tip, ATF agents determined that Alexander, while released on bond for three state felony offenses,

purchased ammunition from Not Just Guns on multiple occasions. Agents also discovered that Eric Hullett purchased a Glock Model 30 Gen 4 .45 caliber pistol at Alexander's request and sold the gun to Alexander. On the same day, Alexander purchased a 50 round box of ammunition and a large capacity magazine capable of holding 26 rounds, both of which fit a .45 caliber gun, like the Glock.

Following its investigation, the government indicted Alexander for two counts of receiving ammunition and one count of receiving a firearm—the Glock Model 30 Gen 4 .45 caliber pistol—while under indictment in violation of 18 U.S.C. § 922(n). When officers arrested Alexander, they found a slide cover plate for a firearm, body armor, a firearm holster, an axe cover, a Polymer80 .40 caliber handgun, a round of 9mm ammunition, a spring for a firearm magazine, and two empty rifle cases. But the officers did not find the Glock or the large capacity magazine.

Alexander agreed to plead guilty to receiving the Glock while indicted in exchange for the government agreeing to dismiss the two remaining counts. At sentencing, the parties contested the base offense level for calculating Alexander's Guidelines range. The government invoked U.S.S.G. § 2K2.1(a)(4)(B), which sets the base offense level at 20 if the offense involved a semiautomatic firearm capable of accepting a large capacity magazine. Alexander, for his part, relied upon U.S.S.G. § 2K2.1(a)(7), which sets the base offense level at 12 if the offense did not involve such a weapon.

The district court sided with the government. Based in part on photographs depicting Alexander posing with a Glock (taken two weeks after he purchased the Glock from Hullett), the district court found that Alexander's offense involved a semiautomatic firearm capable of accepting a large capacity magazine, meaning the base offense level was 20. § 2K2.1(a)(4)(B). From there, the court granted a two-level reduction for acceptance of responsibility and found

Alexander's criminal history category to be IV based on his prior state convictions, resulting in a Guidelines range of 41 to 51 months' imprisonment. Following its assessment of the 18 U.S.C. § 3553(a) factors, the court imposed a within-Guidelines sentence of 42 months' imprisonment.

The district court added to that sentence a term of three years' supervised release, for which the court imposed a special condition. As the district court orally explained the condition, Alexander would be required to submit to a probation officer's "search of [his] person, property, house, residence and the like." The written judgment later specified that the special condition required Alexander to submit to a probation officer's search of his "person, property, house, residence, vehicle, papers, computers . . . , other electronic communications or data storage devices or media, or office." Alexander timely appealed.

## DISCUSSION

On appeal, Alexander challenges both the calculation of his Guidelines range as well as the special condition imposed upon his term of supervised release.

A. We begin with Alexander's Guidelines range. For purposes of determining a criminal sentencing range, a defendant's base offense level is 20 where (1) the offense involved a semiautomatic firearm capable of accepting a large capacity magazine and (2) the defendant is a prohibited person at the time he committed the offense of conviction. U.S.S.G. § 2K2.1(a)(4)(B). Acknowledging that he was a prohibited person at the time he received the Glock from Hullett, Alexander nonetheless contends that the district court erred by concluding that the Glock was capable of accepting a large capacity magazine. On this front, we note that the commentary to the Guidelines explains that a semiautomatic firearm capable of accepting a large capacity magazine is one fitted with a magazine that can "accept more than 15 rounds of ammunition." U.S.S.G.

3

§ 2K2.1(a)(4)(B) cmt. n.2. Alexander does not question the commentary's gloss on the Guideline itself. He instead contests whether the firearm he received fell within the commentary's reach.

Whether the district court correctly calculated Alexander's Guidelines range is, at bottom, a procedural reasonableness challenge to his sentence. *See United States v. Johnson*, 732 F.3d 577, 580–81 (6th Cir. 2013). In assessing that challenge, we ask whether the district court abused its discretion in computing Alexander's sentencing range. *Id.* at 580. As Alexander primarily takes issue with the district court's factual findings, the climb before him is steep. We review those findings for clear error. *United States v. Henry*, 819 F.3d 856, 864 (6th Cir. 2016). And clear error review, as its name suggests, is "highly deferential," meaning we will affirm the district court unless we are "left with the definite and firm conviction that a mistake has been committed." *Taglieri v. Monasky*, 907 F.3d 404, 408–09 (6th Cir. 2018) (en banc) (citation omitted), *aff'd*, 140 S. Ct. 719 (2020). The parties agree that the government had the burden to prove by a preponderance of the evidence that U.S.S.G. § 2K2.1(a)(4)(B) applied here. *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016), *abrogated on other grounds by Beckles v. United States*, 137 S. Ct. 886 (2017). Among other ways, the government may do so with circumstantial evidence. *See id.* at 912; *see also United States v. Peterson*, 840 F. App'x 844, 854 (6th Cir. 2021); *United States v. Mayle*, 334 F.3d 552, 559–60 (6th Cir. 2003).

No mistake occurred in the district court. Consider first the district court's finding that the Glock in the photographs was the Glock that Alexander admitted he received. Supporting evidence was more than ample. Officers found Hullett's sales receipt for the Glock in Alexander's car. About two weeks after Alexander received the Glock from Hullett, he took pictures of himself holding a firearm. Special Agent Mascorro, the lead investigator on Alexander's case, testified that, based on his experience and examination of the image, the weapon Alexander held in the

photographs "looks like a Glock [M]odel 30 Gen 4," the same make and model firearm as the Glock Alexander admitted to receiving. Mascorro further noted several physical similarities between images of the firearm on the Glock manufacturer's website and the photographs of Alexander's gun. From this evidence, concluding that the guns were the same was not clearly erroneous. *See Cooper v. Harris*, 137 S. Ct. 1455, 1465 (2017) (noting that a district court's finding is not clearly erroneous if it is plausible).

Nor was there clear error in the district court's finding that the Glock in the photographs was fitted with a large capacity magazine, one capable of holding 15 or more rounds. On the same day Alexander received the Glock from Hullett, Alexander purchased a large capacity magazine that fit the Glock. Mascorro testified that he believed the Glock in the photographs was fitted with an extended magazine. Among other reasons, the length of the grip on the firearm in the photographs, he explained, was "significantly" longer than what comes standard with the firearm, a ten round magazine. The district court could reasonably infer that the large capacity magazine Alexander purchased was the one that Mascorro identified on the Glock in the photographs. Here too, the district court's finding that the Glock was fitted with a large capacity magazine is based on a reasonable construction of record evidence. *See United States v. Sands*, 4 F.4th 417, 420 (6th Cir. 2021).

Alexander sees things differently. In essence, he argues that the evidence was "too speculative" because the firearm in the photographs merely "appeared to be the same" as the Glock he admitted receiving and "could have" been fitted with a large capacity magazine. But in this deferential setting, we must affirm so long as the district court's finding "is plausible in light of the full record." *Cooper*, 137 S. Ct. at 1465 (quotation marks omitted). And we see nothing implausible about the conclusion that the Glock and the large capacity magazine that Alexander

5

purchased were the same Glock and large capacity magazine depicted in the photographs taken just two weeks later.

Alexander's cited cases do not move the needle. Two of the cases are wholly irrelevant to the issues in today's appeal. *See United States v. White*, 842 F. App'x 894, 899–900 (5th Cir. 2021) (per curiam) (holding that a district court clearly erred in finding that a defendant had control or dominion of a car); *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 309 (Mich. 2004) (discussing a civil plaintiff's burden to prove but-for causation under Michigan tort law). And in the third, *Abrego*, the Fifth Circuit reversed a district court's finding that a firearm was capable of accepting a large capacity magazine solely because the firearm manufacturer's website said that a large capacity magazine comes standard with the firearm. *United States v. Abrego*, 997 F.3d 309, 312–13 (5th Cir. 2021). But that is miles apart from today's case, where the government introduced evidence specific to the firearm Alexander received.

B. Alexander also believes that the written judgment's special condition on his term of supervised release "greatly expanded the scope of the condition" imposed orally at the sentencing hearing. As the parties acknowledge, "[w]e review an alleged discrepancy between oral and written sentences de novo." *United States v. Booker*, 994 F.3d 591, 600 (6th Cir. 2021).

Generally speaking, "when there is a discrepancy" between the oral judgment and the written judgment, "the oral sentence controls." *United States v. Bowens*, 938 F.3d 790, 801 (6th Cir. 2019) (citation omitted). And the remedy for such a discrepancy is a limited remand to correct the written judgment. *Id.* That said, there is "no discrepancy" when the judgments' supervision conditions "use different language to impose substantially identical requirements." *Booker*, 994 F.3d at 601. Take *Booker* as an example. In that case, the defendant argued that the oral and written judgments conflicted because the oral judgment required that he provide the bill for any

6

"cell phone or other electronic device" in his possession to his probation officer while the written judgment, on the other hand, specified that he must provide his "monthly cellular and home telephone bills." *Id.* at 600–01. We rejected the argument that the written judgment swept beyond the oral judgment by requiring the defendant to submit home telephone bills because an "electronic device" includes a home phone. *Id.* at 601.

Much the same reasoning applies here. The oral judgment stated that the special condition required Alexander to submit his "person, property, house, residence and the like" to search by a probation officer. The written judgment, in turn, listed additional types of property that were subject to search: "vehicle, papers, computers . . . , other electronic communications or data storage devices or media, or office." Fair enough, the words in the respective judgments are not identical. Yet the written judgment merely added additional types of property that exemplify the district court's "and the like" catch-all phrase. In this instance, it follows, adding meat to the earlier bone did not give rise to a discrepancy. *See United States v. Buchanan*, 820 F. App'x 401, 405 (6th Cir. 2020) (holding that oral and written judgments did not conflict because "[a]ll that the written judgment did was explain what 'cooperate with any removal or deportation'" meant in the oral judgment by specifying the requirements for cooperation). In particular, doing so did not add an additional supervised-release condition, like requiring the defendant to pay for mandatory drug treatment, rendering Alexander's cited cases inapposite. *See United States v. Dean*, 657 F. App'x 503, 507–08 (6th Cir. 2016); *United States v. Hall*, 669 F. App'x 297, 298 (6th Cir. 2016) (per curiam).

$$* \quad * \quad * \quad * \quad *$$

We affirm.